[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S POST JUDGMENT MOTIONS FOR MODIFICATION OF ALIMONY AND SUPPORT
The parties were divorced on July 11, 1990 through the judgment of dissolution that incorporated a separation agreement dated July 11, 1990.
The agreement and judgment provided, in part, the following:
"ARTICLE V ALIMONY
 5.1 For a period of sixty (60) months, commencing with the month in which the Court shall approve this Agreement, or until the earlier death of the Husband or the death or remarriage of the Wife, the Husband shall pay to the Wife as alimony the sum of $5,500.00 per month; and, in addition to such monthly payments, at such time as he shall receive bonuses or other income, the Husband shall pay to CT Page 8464 the Wife, as additional alimony, 25% of that amount by which his gross annual earned income, net of necessary and proper unreimbursed out-of-pocket business expenses, as reported on Schedule C to Form 1040, exceeds $300,000 but is less than $400,000, and 15% of that amount by which his gross annual earned income exceeds $400,000 but is less than $520,000. In any year in which alimony is due for a period less than twelve months, such additional alimony shall accrue on a monthly-pro-rata basis (e.g., if alimony should begin or terminate as of July 1 of any year, the annual earned income against which the additional alimony percentage is to be applied shall be one-half of the total annual amount.) The Wife shall not be entitled to any additional payments by reason of the Husband's earnings in excess of $520,000 per year.
For the purposes of this paragraph, the term "gross annual earned income" shall mean all income accruing to the Husband from all sources, excluding only interest and/or dividend income unless from any entity by which he is employed and in which he owns an interest of 10% or more and/or capital gains.
 5.2 For a further period of 120 months following the end of the 60 month term specified in paragraph 5.1 of this Article, or until the earlier death of the Husband or the death or remarriage of the Wife, the Husband shall pay to the Wife, as alimony, only the sum of $5,000.00 per month."
"ARTICLE VI CHILD SUPPORT — DEPENDENCY EXEMPTION
 6.1 During his lifetime and those of each of the minor children and through the month of June, 1999, or the sooner emancipation of either child, the Husband shall pay to the Wife, as support for each of the minor children, the sum of $2,000.00 per month.
 6.2 Commencing July, 1999, during his lifetime and until the death, sooner emancipation or eighteenth birthday of the minor child, Caroline, (June 2, 2003) the Husband shall pay to the Wife the sum of $3,000.00 per month as support for Caroline."
The agreement also provided that the Defendant would receive certain CT Page 8465 joint assets with a total value of $50,000 (9.2) and provided that the Plaintiff husband would be responsible for payment of the cost of a four year undergraduate education for each of the children, and that he was permitted to use certain existing custodial accounts to assist in the discharge of this obligation. Article X.
The Plaintiff husband filed a motion for modification on July 26, 1999, asserting that there had been a substantial reduction in his earnings since the time of the judgment, July 11, 1990. On April 20, 2000, he filed an amended motion for modification claiming that his income had not kept pace with expectations, that the Defendant wife's income had increased significantly and her expenses decreased significantly, that her disposable income exceeded expenses by approximately $3000 per month, that the Plaintiff husband's disposable income created a shortfall each month and that the amount he was to pay substantially exceeded the amount recommended by the Support Guidelines. General Statutes § 46b-86 provides the standard for modification of alimony and support orders and judgments as follows:
 (a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to Section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate . . . . In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division.
The court must determine whether there has been a substantial change in circumstances since the date of the last order, i.e. the date of the judgment, which would justify a modification and whether the current child support order is consistent with the child support guidelines. Were such the case, and since the parties weekly combined net income exceeds $2500, the court would have considerable flexibility in its determination of an appropriate award. "[C]ourts remain free to fashion support awards on a case-by-case basis provided the amount of support prescribed at the CT Page 8466 $2,500 level is presumed to be the minimum that should be ordered in such cases." Child Support and Arrearage Guidelines, Preamble, § (d)(7), p. iii. As to alimony, the court must first determine if there is a substantial change in circumstances and if so, the court would then consider all the factors of §§ 46b-82 and 46b-84.
The court has considered and reviewed the testimony presented, the exhibits, the sworn financial affidavits of the parties submitted at the time of the dissolution in July, 1990 and those submitted at the time of the hearing on this motion in April, 2000 and the parties' memoranda. Based upon the evidence the court makes the following findings.
At the time of the dissolution of marriage, the Plaintiff's annual income was approximately $285,000. At the time of the hearing on this motion, his income was approximately $300,000. In addition, he had access to additional income, as he saw fit, from the earnings of a closely held corporation of which he was and is the controlling shareholder. At the time of the dissolution, the Defendant was unemployed and, pursuant to the separation agreement, for five years received alimony in the amount of $66,000 per year plus a percentage of the Plaintiff's income over $300,000. Pursuant to the Agreement, at the end of the first five years, this additional alimony, which amounted to some $43,000 per year, ended and the $5,500 per month alimony was reduced to $5000 per month. In 1993, the Defendant became employed. In 1995, as a result of the reduction after the first five year period, the Defendant's alimony was reduced by $49,000, i.e., $43,000 as a result of the elimination of the additional alimony percentage and $6000 as a result of the periodic alimony reduction from $5,500 to $5,000 per month.
Commencing July 1999, with their elder child Drew Wilson Stoga reaching majority on July 3, 1999, the $4000 per month support payments, $2,000 for each of the two minor children, was reduced to a payment of $3000 for the then one minor child, Caroline.
The Defendant is now employed by the Greenwich Board of Education and earns some $60,000 per year, with an additional amount of $16,000 from investment and other income.
In 1999, the parties' older child began his studies at the University of Vermont. Funds for his first year's college expenses and a substantial portion of a second year were and are available from a custodial account.
The Plaintiff's assets, as shown on his July 11, 1990 financial affidavit, totaled approximately $467,000. After reduction by the payments required pursuant to the separation agreement, his assets CT Page 8467 totaled approximately $300,000. They now exceed $1,200,000. The Defendant's assets at the time of the dissolution, including assets transferred to her as a result of the separation agreement, totaled approximately $300,000 and are now worth approximately $690,000. This increase in the value of the Defendant's assets is primarily due to the increase in market value of the marital home. The Plaintiff's retirement accounts have increased in value from approximately $49,000 at the time of the dissolution to some $583,000 in a 401K account and an additional $100,000 plus in an IRA account. The Defendant had no retirement account at the time of the dissolution and now has approximately $78,000 in pension and retirement plans.
The Plaintiff has been able to meet his existing alimony and child support obligations and, at the same time, to increase his assets. The Plaintiff has chosen to add to his expenses of a mortgage, property taxes and other expenses for his residence in Hillsdale, New York, a monthly rental obligation of $4700 for an apartment. He is currently making charitable contributions of $1000 per month and paying life insurance premiums of $425 per month and other living and entertainment expenses for the benefit of his current wife.
Considering all of the statutory factors, the court finds that there has been no substantial change of circumstances of the parties. The Plaintiff's expenses may have increased but that is by the Plaintiffs own choosing. In addition, as is evident by the thoroughness of their separation agreement, the parties considered their likely futures, both earnings and needs, and developed a long term financial plan with built-in modifications accordingly. The Plaintiff urges the court to totally ignore and disregard these provisions, but to do so would violate the public policy of encouraging settlements of disputes, a goal certainly most important to parties in domestic litigation. "We have long recognized that the pretrial settlement of claims is to be encouraged because, in the vast number of cases, an amicable resolution of the dispute is in the best interests of all concerned. The efficient administration of the courts is subserved by the ending of disputes without the delay and expense of a trial, and the philosophy or ideal of justice is served in the amicable solution of controversies. Krattensteinv. G. Fox Co., 155 Conn. 609, 614, 236 A.2d 466 (1967). We have also acknowledged that, with appropriate judicial supervision, the private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine. Hayes v.Beresford, 184 Conn. 558, 568, 440 A.2d 224 (1981); Baker v. Baker,187 Conn. 315, 321-22, 445 A.2d 912 (1982). At a time when our courts confront an unprecedented volume of litigation, we reaffirm our strong support for the implementation of policies and procedures that encourage fair and amicable pretrial settlements." (Internal quotation marks CT Page 8468 omitted.) Grayson v. Wofsey, Rosen, Kweskin Kuriansky, 231 Conn. 168,174, 646 A.2d 195 (1994). See also Billington v. Billington, 220 Conn. 212,221-22, 595 A.2d 1377 (1991). In this case, the parties were exceptionally good at anticipating what their futures would hold. Since the court finds that there has not been a substantial change of circumstances, it need not determine whether a separation agreement predicting and providing for substantial changes in circumstances should or would prevent a modification upon their occurrence. In this case, neither a modification of alimony or support is warranted. In addition, although the amount of support award exceeds the guideline figure, the parties combined income exceeds the maximum applicable limits of the guidelines by more than double the maximum limit. Deviation, in this case is appropriate as a result of financial resources available to the Plaintiff as part of a coordination of total family support.
HILLER, J.